UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RODNEY MILES,**

       **Plaintiff,**　　　　　　　**CIVIL ACTION NO. 04-CV-74147-DT**

   **vs.**　　　　　　　　　　　**DISTRICT JUDGE AVERN COHN**

**AUDBERTO ANTONINI,**　　　**MAGISTRATE JUDGE MONA K. MAJZOUB**
**et. al.,**

       **Defendants.**
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e should be **GRANTED**.

\*\*\*

    Plaintiff was allowed to proceed *in forma pauperis* and filed the instant complaint on October 27, 2004 pursuant to 42 U.S.C. § 1983. Count I of Plaintiff's complaint alleges that Defendants violated his Eighth Amendment rights with the unnecessary and wanton infliction of pain. Count II alleges violations of state health and safety codes and violations of prison policies and regulations. The case has been referred to the undersigned for all pretrial proceedings. Defendants Antonini, Mishra, and Steele are physicians, and Defendant Russ is a Nurse Practitioner. All four Defendants treated Plaintiff and are alleged to have violated his constitutional rights in the process. On November 2, 2006 Defendants Antonini, Steel, and Russ filed a Motion to Dismiss, to which Plaintiff responded on November 28, 2005. Defendant Mishra remains unserved.

    In a letter dated October 29, 2002, orthopaedic surgeon Thomas O'Keefe examined Plaintiff for intractable left groin pain. Dr. O'Keefe concluded that Plaintiff was "a candidate for revision hip arthroplasty" and "will need either grafting or placement of trabecular metal wedges behind the cup."

(Pl.'s Compl. at Ex. A). Plaintiff's surgery was scheduled for November 2002. However, Plaintiff requested that the surgery be delayed due to an impending court deadline. *Id.* at Ex. B. On December 17, 2002, a registered nurse completed a Michigan Department of Corrections (MDOC) Special Accommodation Notice indicating that Plaintiff required "Barrier Free/Wheelchair Accessible [housing], Ground Floor Room, Shower Chair, Bottom Bunk, No Work Assignment, Cane, Handicap Table, Transport Vehicle with Lift, No lifting More Than 10 lbs, Wheelchair, and prosthetic eye." *Id.* at Ex. G.

On February 4, 2004 Plaintiff complained to Defendant Steele that his current pain medications were ineffective in relieving his symptoms. Plaintiff also advised Steele that he needed to be rescheduled for the surgery that was previously postponed. *Id.* Ex. D.

On March 8, 2004 Nurse Tylutki, who is not a party to this case, completed a Michigan Department of Corrections Special Accommodation Notice in which Defendant indicated that Plaintiff needed only a "Bottom Bunk" and "prosthetic eye." Defendant Russ approved Nurse Tylutki's accommodations. *Id.* at Ex. F. Plaintiff claims that Tylutki completed, and Defendant Russ approved "a special accommodation notice for plaintiff without ever physically examining the plaintiff and without continuing the previous accommodations recommended by orthopedic specialists" *Id.* at 4, ¶¶ 14-15.

On March 14, 2003 Plaintiff alleges that "defendant Antonini cancelled all surgery and everything related to orthopedic details and devices. This was after being examined on April 24, 2002 and C.A.T. scan on July 3, 2002 by orthopedic specialists who diagnosed the initial need for surgery." *Id.* at 3, ¶ 11. On April 21, 2003 Plaintiff filed a Step I grievance complaining that Dr. Antonini "confiscated [his] wheelchair and cane" and that during a physical examination, the doctor "twisted [his] legs injuring [his] spine" *Id.* at Ex. C. Plaintiff's Step I grievance was denied. Plaintiff filed a Step II appeal to which Regional Health Administrator Jan Epp issued the following response dated May 30,

2003:

> Investigation reveals that I have reviewed your medical record. You signed release of medical responsibility on 11-21-02 regarding an orthopedic consultation.
>
> Custody memo documentation 12-17-02 states you were lifting weights, spotting other prisoners while they were lifting, removing weights, and placing them on the ground in the weight pit. You were at that time, to be in a wheelchair.
>
> On 3-11-03 you were seen in health care for an appointment with the Medical Service Provider. You were in your wheelchair. The Medical Service Provider asked if [you] could stand, and you replied yes, and walked to the scales.
>
> On 3-14-03 you saw Dr. Antonini. You presented with multiple complaints regarding pain. You were in a wheelchair, and had a wooden cane. Dr. Antonini obtained a history regarding where you denied that you can't walk, run, bend over, or lift anything heavy. Dr. Antonini then questioned you regarding an officer reporting that you are not truthful. You responded, 'You need to believe him because he is an officer, and I'm an inmate'. []
>
> Dr. Antonini then asked you what would you say if I tell you that I have a video recording where you are walking, running, doing pull ups, lifting weights, bending over, looking for and carrying your own weights. At this time, you stood up from the wheelchair and said, 'You can keep the wheelchair.' You left the room. Dr. Antonini also told you that anything else that represents an accommodation based on the wheelchair will be discontinued today.
>
> Therefore, the wheelchair, wheelchair cushion, air mattress, cane, lifting restriction, ground floor room, shower chair, no work assignment, cane, handicap table, and tray delivery have been canceled by Dr. Antonini. Everything related to surgery and orthopedic has also been canceled by Dr. Antonini.
>
> Grievance: Denied.

*Id.* at Ex. C.

Two years later, on November 25, 2005 Plaintiff was taken to Foote hospital, where an x-ray of his hip led the doctors there to recommend a wheelchair, pain medication, and a follow up

appointment with an orthopedic specialist. (Pl.'s Mot. for TRO and Prelim Injc. at 1). An orthopedic specialist examined Plaintiff on January 25, 2006 and recommended that Plaintiff undergo hip surgery. *Id.* at 2. Plaintiff alleges that Defendant Antonini an a Dr. Spickers have conspired to prevent Plaintiff from having necessary hip surgery. *Id.*

Plaintiff now seeks both monetary damages and injunctive relief, claiming that Defendants were deliberately indifferent to his medical needs and violated Michigan Department of Corrections' regulations and policies regarding his health care and services. Defendants claims that the Court grant their Motion to Dismiss based on Plaintiff's failure to exhaust administrative remedies and his failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED. R. CIV. P. 12(b)(6); *see Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 1997).

## INADEQUATE MEDICAL CARE

To establish an Eighth Amendment violation based upon the denial of medical attention, Plaintiff must prove that Defendants acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). Deliberate indifference is the reckless disregard of a substantial risk of serious harm. *See id.* at 835-36. Mere negligent inattention to a prisoner's request for assistance, or even gross negligence, does not offend substantive due process under the Fourteenth Amendment, *Davidson v. Cannon*, 474 U.S.

344 (1986), and medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 106. Moreover, a mere difference of opinion between a prisoner and a doctor with respect to diagnosis and treatment does not rise to the level of a constitutional deprivation. *See id.* at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Basically, there must be a knowing failure or refusal to provide urgently needed medical care, the consummate effect of which causes a residual injury which could have been prevented with timely attention, and the court must consider the wide discretion allowed prison officials in their treatment of prisoners under authorized medical procedures. *See Westlake*, 537 F.2d at 860.

Here, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs based on their conclusion on May 30, 2003 that Plaintiff did not require a wheelchair, ongoing treatment with narcotic painkillers or hip surgery. In essence, Plaintiff disagrees with Defendants' medical conclusions regarding treatment. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5. At most, Plaintiff's claims consist of his disagreement with the diagnosis and medical treatment received for his medical condition, rather than constitutionally inadequate medical care. *See Estelle*, 429 U.S. at 107 (stating that "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . ."); *Westlake*, 537 F.2d at 860 n.5. Where there is simply a difference of opinion between a prisoner and prison doctors, the requisite deliberate indifference has generally been held not to exist. *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *Mayfield v. Craven*, 433 F.2d 873 (9th Cir. 1970). Therefore, even accepting the allegations contained in Plaintiff's complaint as true,

he has failed to state a claim against Defendant Tylutski (or any of the other unserved Defendants).

**DEFENDANTS' ALLEGED VIOLATIONS OF PRISON POLICY**

Plaintiff also claims that Defendant Tylutki violated prison policy by issuing a Special Accommodation Notice without having physically examined him. Assuming, *arguendo*, that prison policy directs that Defendant should have physically examined Plaintiff before issuing the Special Accommodation Notice, the failure of a prison, or the state, to follow its own policies and procedures does not amount to a constitutional violation. *See Hyland v. Martin*, 2000 U.S. Dist. LEXIS 1634 (W.D. Mich. 2000)(citing *McVeigh v. Bartlett*, 52 F.3d 325 (6th Cir. 1995)); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992) (holding that failure to comply with an administrative rule does not by itself give rise to a constitutional violation). Similarly, the failure of a prison to follow state law alone does not rise to the level of a constitutional violation. Failing to demonstrate a cognizable constitutional claim based on Defendants alleged violations of prison policy or state law, Count II of Plaintiff's complaint fails to state a claim.

Accordingly, Defendants' Motion to Dismiss should be **GRANTED** and the instant complaint should be dismissed with respect to Defendants Antonini, Steele, and Russ.

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401

(6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: May 05, 2006                          s/ Mona K. Majzoub
                                             MONA K. MAJZOUB
                                             UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Rodney Miles and Counsel of Record on this date.

Dated: May 05, 2006                          s/ Lisa C. Bartlett
                                             Courtroom Deputy